## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03271-MEH

TORRENCE BROWN-SMITH,

      Plaintiff,

v.

BOARD OF TRUSTEES OF THE UNIVERSITY OF NORTHERN
COLORADO,

      Defendant.

---

## BOARD OF TRUSTEES OF THE UNIVERSITY OF NORTHERN
## COLORADO'S MOTION TO DISMISS AMENDED COMPLAINT

Defendant Board of Trustees of the University of Northern Colorado, through the Colorado Attorney General, moves to dismiss Plaintiff's Amended Complaint, ECF 28, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In accordance with D.C.COLO.CivR 7.1(a), undersigned conferred with counsel for Plaintiff on May 21, 2021 via video conference. Plaintiff opposes this motion.

## ALLEGATIONS

Plaintiff Torrence Brown-Smith was enrolled at the University of Northern Colorado and set to graduate in May 2020. ECF 28 at ¶¶ 1 and 2. On February 11, 2020, the University received a complaint alleging that Plaintiff, a male, had choked a female student and digitally penetrated her vagina without consent (the "Incident"). *Id.* at ¶ 86. On February 12, Plaintiff received a Notice of Investigation. *Id.* at ¶ 87.

On February 14, 2020, Plaintiff met with a University investigator regarding the Incident. *Id.* at ¶ 88. On March 12, the University sent Plaintiff a "Draft Investigation Report." The Report summarized facts and outlined contested and uncontested information gathered by the investigator. Plaintiff was provided with five business days to submit comments regarding the Report and/or additional questions that Plaintiff believed the investigator should ask the complainant. *Id.* at ¶ 89.

On April 24, 2020, the University informed Plaintiff that the investigation of the Incident was complete and that he needed to meet with a hearing officer to determine responsibility and outcomes, consequences, or next steps required. *Id.* at 90; see also April 24, 2020 letter, attached as **Exhibit A**. The April 24 letter identified the specific policies and standards that Plaintiff was accused of violating. **Ex. A** at pp. 1-2. The letter also informed Plaintiff that he needed to schedule a meeting with a hearing officer "no later than Wednesday, April 29, 2020, at 4:00 pm." *Id.* at p. 2.

Included with the April 24 letter was a document titled "University of Northern Colorado Title IX Investigation Report." ECF 28 at ¶ 144. With regard to the report and the meeting with the hearing officer, the April 24 letter provides:

> During the meeting, the Hearing Officer will review the report and you will have a chance to respond to the findings and ask questions. You will also be asked questions by the Hearing Officer during this meeting. *This meeting, in addition to the fact finding report, will be used to determine if you are responsible for violating any policies or standards.*

**Ex. A** at p. 2 (emphasis added). The letter also provides that Plaintiff was "entitled" to an advisor at the meeting, including an "attorney or any person you wish." *Id.*

On April 24, 2020, after receiving the above cited letter, Plaintiff emailed the University to schedule the required meeting with a hearing officer. ECF 28 at ¶ 91. The University replied, asking if Plaintiff was available to meet at 11:00 a.m. on April 27. *Id.* at ¶ 92. "*Plaintiff* responded at 6:19 PM on April 24 that 11 AM on April 27th would work." *Id.* at ¶ 93 (emphasis added). With regard to the timing of such a meeting, the Student Code of Conduct provides: "The student … subject to disciplinary action will be informed three (3) days prior to the hearing of a summary of the alleged behavior and code of conduct violation and the time and place of the hearing." *Id.* at ¶ 35. April 24 was three days prior to April 27, 2020.

With regard to a student's responsibilities when meeting with a hearing officer, the Student Code of Conduct provides:

> The student (the complainant and the respondent) … has the right to be assisted by an advisor if they choose, at their own expense. This advisor can be a faculty member, student, *legal counsel* or other individual, but can have no other role in the hearing, such as a witness. *The student is responsible for presenting his or her own information*, and therefore, advisors are not permitted to speak or participate directly in any hearing.

Student Code of Conduct, attached as **Exhibit B**, at p. 9 § IV.2 (emphasis added). The Code further provides that the student "must submit to the Hearing Officer a list of any witnesses and/or information for review 24 hours prior to the scheduled hearing." *Id.* Plaintiff does not allege that he ever submitted a witness list for the hearing officer's review, or who he would have called as a witness.

3

On April 27, 2020, Plaintiff met with the hearing officer—as he previously confirmed that he would do on April 24. ECF 28 at ¶¶ 109-110. Plaintiff did not present witnesses and did not bring an advisor with him. *Id.* at ¶ 110.

On May 1, 2020, the hearing officer sent Plaintiff a letter notifying him that he had been found responsible for violating the University Student Code of Conduct. *Id.* at ¶¶ 11 and 111. The eight-page May 1 letter includes findings and conclusions regarding the Incident. May 1, 2020 letter, attached as **Exhibit C**.[1] As relevant to Plaintiff's claims, the hearing officer found, based on a preponderance of the evidence, that (1) Plaintiff did not ask for consent to strangle the victim; (2) Plaintiff did not ask for consent to digitally penetrate the victim; and (3), even if the victim consented to kissing, she did not consent to strangulation or digital penetration. *Id.* at pp. 1-3. Based on these findings, the hearing officer found Plaintiff responsible for physical abuse, sexual harassment, and sexual misconduct. *Id.* at p. 3. As part of the discipline imposed, Plaintiff was suspended from the University until 2022. ECF 28 at ¶ 162. At some point, Plaintiff appealed the Hearing Officer's decision. *Id.* at ¶¶ 119-125.

Throughout the disciplinary process, Defendant followed certain procedures contained in the federal government's "2011 Dear Colleague Letter." *Id.* at ¶¶ 174-181.[2] The 2011 Dear Colleague Letter was rescinded on September 22, 2017, by the

---

[1] The identities of the victim of the Incident and other student witnesses have been redacted in accordance with FERPA. 34 C.F.R. § 99.30(a)

[2] United States Department of Education, Office of the Assistant Secretary for Civil Rights, Dear Colleague Letter (2011), https:/www2.ed.gov/print/about/offices/list/ocr/letters/colleague-201104.html.

"2017 Dear Colleague Letter."[3] The Department of Education has since adopted new regulations to govern Title IX proceedings, effective August 14, 2020.[4]

## PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's Amended Complaint removes his prior causes of action for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Promissory Estoppel, and his prayer for damages and a judicial declaration. ECF 33-1, Redlined Copy of Amended Complaint. All that remains in Plaintiff's Amended Complaint is a prayer for damages based on gender discrimination pursuant 20 U.S.C. § 1681, *et seq.* ("Title IX"), and a prayer for injunctive relief for violation of the Fourteenth Amendment Due Process Clause pursuant to 42 U.S.C. § 1983. ECF 28, Prayer ¶¶ 1-2.

The only significant averments that Plaintiff appears to add to his Amended Complaint concern the publication of a newspaper article by the *Greeley Tribune* in 2017. ECF 33-1, ¶¶ 8, 182-211, 229.

## LEGAL STANDARDS

### I. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a

---

[3] United States Department of Education, Office of the Assistant Secretary for Civil Rights, Dear Colleague Letter (2017), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf.

[4] *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020) (codified at 34 CFR Part 106).

judgment on the merits of the plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and "there is a presumption against our jurisdiction"). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A facial attack under Rule 12(b), such as this Motion, "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction—Plaintiff. See *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015).

## II. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *Sutton v. Utah State Sch. For the deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong

analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the factual allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679. The length of a complaint, alone, cannot satisfy the plausibility standard. *Chaplin v. Anderson*, 18-12108, 2019 WL 1219412, *2 (E.D. Mich. Mar. 15, 2019) ("Regardless of length, a complaint must still allege a plausible claim for relief.") (citing *Iqbal* and *Twombly*).

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

When conducting a plausibility analysis, a court is generally bound to the four corners of a complaint. However, when a "document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). "Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true." *Id.* at 1385.

## ARGUMENT

The Eleventh Amendment precludes Plaintiff's § 1983 claims, and Plaintiff's Title IX claim must be dismissed because he does not plausibly allege that his suspension was motivated by gender bias.

**I. Eleventh Amendment immunity—Fed. R. Civ. P. 12(b)(1).**

The Board is a statutorily created Colorado state entity and body corporate. Colo. Rev. Stat. § 23-40-104. The Eleventh Amendment generally grants state entities immunity from claims in federal court. *Tennessee v. Lane*, 541 U.S. 509, 517-19 (2004); *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993) ("The Eleventh Amendment confers total immunity from suit, not merely a defense to liability.") (citation omitted). Eleventh Amendment immunity is "jurisdictional." *Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017).

Congress has not abrogated the Board's Eleventh Amendment immunity from § 1983 claims, and Colorado has not waived that immunity.[5] *See, e.g., Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (finding no Congressional abrogation of immunity); *Robinson v. Bd. of Regents of the Univ. of Colo.*, 390 F. Supp. 2d 1011, 1016 (D. Colo. 2005) (finding no waiver).[6]

Plaintiff does request declaratory and injunctive relief in the form of vacating the hearing officer's decision, expunging his student records, requiring the University to readmit him as a student, and allowing him to graduate. ECF 28 at ¶ 259, and Prayer ¶ 2. Under the *Ex parte Young* doctrine, the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official. *Ex parte Young,* 209 U.S. 123, 159-60 (1908). But the doctrine

---

[5] In contrast, Congress has abrogated Eleventh Amendment immunity from Title IX lawsuits. *Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064, 1081 (D. Colo. May 26, 2017).

[6] The Board is also entitled to dismissal on the § 1983 claim for the additional reason that it is not a "person" who may be sued under that statute. *Will*, 491 U.S. at 65-66.

9

"is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, … and *has no application in suits against the States and their agencies, which are barred regardless of the relief sought.*" *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (emphasis added).

Plaintiff has named the Board of Trustees as a collective body and "[i]t does not matter what form of relief a citizen might request in a suit against a state agency; even a suit solely for prospective injunctive relief when it is brought against a state agency *qua non* is barred by the [Eleventh] amendment." *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), cert. denied, 525 U.S. (1999), and abrogated on other grounds by *Verizon Md. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635 (2002). Indeed, the Tenth Circuit previously ruled that the *Ex parte Young* doctrine does not apply to governing bodies of state universities when similar claims were asserted. *Buchwald v. Univ. of N.M. Sch. of Med.,* 159 F.3d 487, 495-96 (10th Cir. 1998) (holding that *Ex parte Young* doctrine did not apply to the University of New Mexico Board of Regents and a due process claim seeking prospective injunctive relief was barred by the Eleventh Amendment).

## II. Failure to state a Title IX claim—Fed. R. Civ. P. 12(b)(6).

The Tenth Circuit has recognized a private right of action under Title IX for sex discrimination in the context of a student disciplinary matter. *Doe v. Univ. of Denver,* 952 F.3d 1182, 1190 (10th Cir. 2020). To succeed on such a claim, Plaintiff must show that his exclusion from the University "was on the basis of sex."

10

*Seamons v. Snow,* 84 F.3d 1226, 1232 (10th Cir. 1996); see also *Doe v. Univ. of Colo.*, 255 F. Supp. 3d at1074 (holding that for a plaintiff to prove that a campus disciplinary proceeding was improperly motivated or affected by gender, the plaintiff must "show that gender bias was a source of the deprivation") (quoting *Johnson v. W. State Colo. Univ.*, 71 F. Supp. 3d 1217, 1224 (D. Colo. 2014)). A plaintiff's allegations that he was discriminated against must meet the *Iqbal* and *Twombly* pleading standards and cannot be based on "conclusory allegations of gender bias." *Doe v. Univ. of Colo.*, 255 F. Supp. 3d at 1076. Further, a court should not "accept allegations of gender bias purely 'on information and belief,' with no explanation of the information leading to that belief." *Id.* at 1076-77.[7]

Plaintiff alleges that gender bias is demonstrated through five broad categories: (1) procedural irregularities in the underlying Title IX proceedings; (2) the Hearing Officer's adverse ruling and imposition of sanctions; (3) the Plaintiff's belief that, statistically, females file more Title IX complaints against males at the University; (4) the University's partial adherence to the 2011 Dear Colleague Letter, and; (5) a single article in the local newspaper about other sexual

_____

[7] Paragraphs in Plaintiff's original Complaint that are asserted "on information and belief" include the following: 5, 9, 16, 22, 131, 132, 134, 135, 137, 181, 187, 197, 198, 199, 200 and 223. ECF 1. Plaintiff's Amended Complaint struck the phrase from the following paragraphs (with new paragraph numbers corresponding to the Amended Complaint in parentheses): 9(7), 199(227), 200(228), and 223(251). ECF, 33-1, Redlined Copy of Amended Complaint. In the instances where Plaintiff struck the phrase "information and belief," Plaintiff does not appear to aver additional facts to support the claims at issue.

misconduct cases. As explained below, Plaintiff's allegations do not meet the *Iqbal* and *Twombly* pleading standards.

**A. Procedural irregularities.**

Plaintiff alleges that the University must be biased against males because he was not given three days' notice of his meeting with the hearing officer; was not provided the materials that would be used against him at the meeting, and was deprived of sufficient time to submit evidence before the meeting. Plaintiff also asserts that he was not advised that the "meeting" with a hearing officer was in fact a "hearing." ECF 28 at ¶¶ 13, 36, 40-47, and 95-124. However, the Court is not bound by these allegations, which are directly contradicted by other allegations in Plaintiff's complaint and the documents that Plaintiff quotes and relies on in his complaint:

- On March 12, 2020 the University provided Plaintiff a draft investigative report and provided Plaintiff with an opportunity to submit comments and additional questions for the victim. ECF 28 at ¶ 89.

- On April 24, 2020, the University provided Plaintiff with the final investigatory report, and requested that he set a meeting with a "hearing officer" to determine responsibility by April 29. *Id* at ¶¶ 90 and 144. The letter identified the specific policies and standards that Plaintiff was accused of violating, informed Plaintiff the meeting "will be used to determine if you are responsible for violating any policies or standards," and advised him that he was entitled to be accompanied by an attorney at the meeting. **Ex. A**.

- Plaintiff agreed to meet with the hearing officer on April 27, 2020—three days after the April 24 letter—although he had until April 29 to arrange such a meeting. ECF 28 ¶¶ 91-93.

- Plaintiff was advised that he needed to submit a list of witnesses to the hearing officer 24 hours prior to the meeting, but did not do so. **Ex. B** at p. 9 § IV.2; ECF 28 at ¶¶ 35, 100.

- On April 27, 2020, Plaintiff met with the hearing officer without an advisor or witnesses. ECF 28 at ¶ 110.

It appears that Plaintiff's real complaint is that he failed to read the information the University provided and included within the Student Code of Conduct. But Plaintiff was twenty-two years old, was a college senior at the time of the Incident, and had been accepted into a Ph.D. program. ECF 28 at ¶¶ 20 and 30-31.

Plaintiff's failure to understand his responsibilities and obligations does not plausibly suggest gender bias. Further, procedural irregularities—which do not even exist in this case—do not plausibly suggest gender discrimination. *Doe v. Univ. of Denver*, 952 F.3d at 1203 ("A few procedural irregularities in this vein are not necessarily uncommon or even all that troubling. After all, sexual-misconduct investigations and proceedings will not be perfect."). In any event, Plaintiff does not allege that female respondents were treated any differently. *See Doe v. Univ. of Colo.*, at 1078-79 ("although Plaintiff alleges that many specific aspects of the truth-seeking process were unfair to him, he does not allege that a female accused of sexual misconduct would have been treated differently").

**B. Adverse ruling.**

Plaintiff alleges that the University must be biased against males because the hearing officer somehow misapplied the preponderance of the evidence standard, ruled against him, and imposed—in his view—an unduly harsh sanction. To support these allegations, Plaintiff spends a great amount of time explaining his view of the evidence in the underlying proceedings and why the hearing officer wrongly determined that the victim did not consent. ECF 28 at ¶¶ 55, 60-75, 80-84,

141-143, 146-155, 158-161, and 224-225. But, taking Plaintiff's allegations as true, his disagreement with the hearing officer's decision does not plausibly allege gender bias. *Doe v. Univ. of Denver*, 952 F.3d at 1198 ("While a hearing officer's decision at odds with the great weight of evidence supports an inference of bias, it does not necessarily support an inference of bias on account of gender.").

### C. Statistical evidence.

Plaintiff alleges that the University must be biased against males because, "upon information and belief," complaints of sexual misconduct are disproportionately lodged by females. ECF 28 at ¶¶ 130-138, 180. The Tenth Circuit recently joined the majority of courts that have rejected this argument, holding that a "factfinder could not reasonably infer from bare evidence of statistical disparity in the gender makeup of sexual-assault complainants and respondents that the school's decision to initiate proceedings against respondents is motivated by their gender." *Doe v. Univ. of Denver,* 952 F.3d at 1194 (collecting cases). To the contrary, "neither the statistical disparity in the gender makeup of respondents nor evidence of an anti-respondent bias can create a reasonable inference of bias on account of gender." *Id.* at 1201. Indeed, "the putative nondiscriminatory causes of disparity – the gender makeup of sexual-assault perpetrators, victims, and reporters – are almost completely beyond the control of the school." *Id.* at 1194*; see also Doe v. Univ. of Colo.,* 255 F. Supp. 3d at 1078 ("[T]he University is not responsible for the gender makeup of those who are accused *by other students* of sexual misconduct.") (emphasis in original, internal quotation marks omitted).

14

### D. 2011 Dear Colleague Letter.

Plaintiff alleges that, on information and belief, the University enforced its policies and procedures in a way that unfairly disadvantaged male students in order to follow the 2011 Dear Colleague Letter and to avoid the potential loss of federal funds. ECF 28 at ¶¶ 5-7, 176-181. As an initial matter, the 2011 Dear Colleague Letter was rescinded in 2017, prior to the Incident and the University's adjudication of the Incident.[8] The University could not have felt pressure to avoid the potential loss of federal funds for failing to comply with rescinded guidance. Additionally, as recognized by the Tenth Circuit, the majority of courts to consider Plaintiff's argument have concluded that "such evidence is insufficient in itself to support any inference that the school's actions in a particular case were motivated at least in part by gender bias." *Doe v. Univ. of Denver,* 952 F.3d at 1192 (collecting cases). Instead, the 2011 Dear Colleague Letter "is neutral on its face … and evidence that a school felt pressured to conform with its guidance cannot alone satisfy Title IX's fundamental requirement that the challenged action be "on the basis of [gender]." *Id.* at 1192-93 (citations omitted, alterations in original, quoting 20 U.S.C. § 1681(a)); see also *Doe v. Univ. of Colo.*, at 1078 ("Moreover, pressure from the federal government to investigate sexual assault allegations more aggressively— either general pressure exerted by the Dear Colleague Letter or specific pressure exerted by an investigation directed at the University, or both—says nothing about the University's alleged desire to find men responsible because they are men.").

---

[8] See footnote 3, *supra.*

### E. Newspaper Article in the *Greeley Tribune*

Plaintiff's Amended Complaint attempts to supplement its conclusory claims of gender discrimination with a description of a single newspaper article published by the *Greeley Tribune* in 2017, which describes two prior cases of sexual misconduct alleged by students at the University.[9] ECF 28 at ¶¶ 182-211. **Exhibit D, *Greeley Tribune* Article**. In describing that newspaper article, Plaintiff highlights: the stories of the student complainants featured in the article; the punishments of the student respondents in the featured cases; the gender composition of the featured complainants and respondents; the Title IX Coordinator's statement in the article that "the University needed to play catch up"; and the fact that the University addressed staffing needs by hiring two investigators—who both happened to be female. *Id.*

Plaintiff's discussion of the newspaper article does nothing to move his claims of gender discrimination beyond mere speculation. The newspaper article does factually identify the gender of the complainants and respondents involved in the cases that it features. However, doing so is no different from pointing to the gender composition of the University's complainants and respondents across all of its cases. The University is not responsible for the gender composition of the complaints that it receives for investigation, and that gender composition is not indicia of sex

---

[9] While Plaintiff's Amended Complaint initially refers to "pressure from local **newspapers**" (emphasis on plural), the Amended Complaint goes on to describe only a single article from a single newspaper. *Compare*, ECF 28, ¶ 8 with ¶¶ 182-211.

discrimination in the investigation process. *Doe v. Univ. of Denver,* 952 F.3d at 1194 (collecting cases). A newspaper identifying the gender composition of the parties in a small handful of cases does not change that analysis.

Plaintiff also mischaracterizes facts reported in the article. The Amended Complaint states that in an effort "[t]o 'play catch-up' [a partial quote from the Title IX Coordinator earlier in the article], UNC hired female investigators, a fact that UNC relayed to and highlighted for the reporter." ECF 28 at ¶ 198. The Amended Complaint goes on to state that the University "highlighted that fact for a newspaper because it believes that the gender of its investigators is important to the dynamic of Title IX investigators…"and that "it needed more females in its Title IX office was because it understood that UNC employees in that office would be investigating males in the wake of allegations made by female students." *Id.* at ¶¶ 199-200. Based on the contents of the newspaper article, Plaintiff also asserts that the University was pressured to—or sought to—treat male students more harshly because they were male. *Id.* at ¶¶ 203, 208.

These are conclusions that the Court need not accept as fact in considering whether Plaintiff's complaint is sufficient. *Twombly*, 550 U.S. at 680. Further, these conclusions are objectively unsupported by the newspaper article that Plaintiff cites. The article does not state anywhere that the University "highlighted" the hiring of the female investigators for the reporter, or that the University "relayed" this information at all. The article merely states as fact that "UNC has added two female investigators since ['Susan reported her attack']" without attribution to any

17

source. **Ex. D** at p. 8. Even if Plaintiff's conclusions are accepted at face value, the gender identity of an investigator or hearing officer is not sufficient to infer gender bias in a university's resolution process. *Johnson v. W. State Colo. Univ.*, 71 F. Supp. 3d 1217, 1226 (D. Colo. 2014) ("…the fact that the individual taking disciplinary action against the plaintiff belongs to the opposite gender does not, of itself, give rise to an inference of gender bias"). Additionally, no portion of the newspaper article states or supports Plaintiff's conclusion that the article urged the University to treat male respondents more harshly ***because they were male***. Even if Plaintiff is suggesting that the article was encouraging bias in favor of complainants to the detriment of respondents—which it does not—such a pro-complainant bias does not give rise to a cause of action for sex discrimination under Title IX. *Doe v. Univ. of Denver*, 952 F.3d at 1198.

Plaintiff's overarching insinuation is that the newspaper article supplied the necessary external pressure for the University to take a "gender-based approach" to improving its Title IX Office, resulting in bias against male respondents. ECF 28 at ¶¶ 8, 197, 202, 210. But Plaintiff's reliance upon facts described in the article to support that conclusion defies logic, as the article describes changes implemented by the University ***before*** the article was published. *See,* ECF 28 ¶¶ 198-202. For example, the Amended Complaint incorrectly suggests that the Title IX Coordinator "acknowledged that the University needed to play catch-up" and that this statement was "in response to the reporting." ECF 28 at ¶ 194. This conclusion is illogical, as

18

the quoted statement could not possibly be "in response" to the article in which it was published.

Further, this Court has previously held that a newspaper article criticizing a university's sexual misconduct resolution process—even when aggregated with other factors—does not support an inference of gender discrimination. *Messeri v. Univ. of Colorado, Boulder*, 18-CV-2658-WJM-SKC, 2019 WL 4597875, at *14 (D. Colo. Sept. 23, 2019) ("the Court finds here that scrutiny and criticism from the student newspaper does not say anything about the University's desire to find men responsible because they are men."). Other courts have made similar findings regarding the insufficiency of external criticism to infer gender bias. *E.g. Ruff v. Bd. of Regents of Univ. of New Mexico*, 272 F. Supp. 3d 1289 (D.N.M. 2017); *Doe v. Loh*, CV PX-16-3314, 2018 WL 1535495 (D. Md. Mar. 29, 2018), aff'd, 767 Fed. Appx. 489 (4th Cir. 2019). Even in instances where courts have held that external pressure on universities was sufficient to plausibly infer gender bias, those pressures included national media coverage, federal investigation, litigation, protests/campaigns on campus, and/or harassment of the respondent, combined with other indicia of gender bias within the institution. *See*, *Norris v. Univ. of Colorado*, Boulder, 362 F. Supp. 3d 1001 (D. Colo. 2019); *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016); *Doe v. Rollins Coll.*, 352 F. Supp. 3d 1205 (M.D. Fla. 2019); *Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386 (W.D.N.Y. 2017). Plaintiff's allegations of external pressure by a single article in the local newspaper simply do not rise to this level.

19

Finally, the Amended Complaint relies on the newspaper article to assert that Plaintiff's punishment was disproportionately harsh. ECF 28 at ¶ 204-210. Plaintiff compares his violations and sanctions to those of the two other male respondents described in the article. However, this point by Plaintiff is self-defeating in the context of a sex discrimination claim. Even if accepted as true, it shows only that Plaintiff was treated differently from other *male* respondents. If Plaintiff had alleged different treatment between male and female respondents, such an averment would give rise to an inference of sex discrimination. *See, Throupe v. Univ. of Denver,* 988 F.3d 1243 (10th Cir. 2021) (professor's Title IX claim was insufficient where he admitted that other male professors were treated poorly, and failed to show that a female professor would have been treated differently); *Oirya v. Brighman Young, Univ.*, 20-4052, 2021 WL 1904863 (10th Cir. May 12, 2021) (unpublished) (male student expelled for sexual harassment and other violations failed to allege that any similarly situated female respondent was treated differently). Plaintiff's averment also fails to account for the fact that appropriate sanctions for misconduct are based on the specific facts of each case, and that courts in the Tenth Circuit are disinclined to overturn those sanctions unless the punishments are "arbitrary, lacking a rational basis, or shocking to the conscience of federal judges." *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1200–01 (10th Cir. 2003). *See also, Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998).

## CONCLUSION

The Board has absolute immunity from plaintiff's due process claims under the Eleventh Amendment. Despite the excessive length of his complaint, Plaintiff does not plausibly allege the necessary element of gender bias to support a Title IX action. Wherefore, the Board respectfully requests that Plaintiff's Complaint be dismissed in its entirety.

DATED this 25th day of May, 2021.

PHILIP J. WEISER
Attorney General

*/s/ Skip Spear*
Skippere Spear, No. 32061*
Amy Colony, No. 36124*
Senior Assistant Attorneys General

Patrick Warwick-Diaz, No. 49024*
Eric T. Butler, No. 47969*
Assistant Attorneys General

Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203
(720) 508-6140; -6615; -6124; -6151
skip.spear@coag.gov
amy.colony@coag.gov
patrick.warwick-diaz@coag.gov
eric.butler@coag.gov
*counsel of record

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that I served the foregoing **Board of Trustees of the University of Northern Colorado's Motion to Dismiss** upon all parties herein by email at Denver, Colorado, this 25th day of May, 2021 addressed as follows:

Timothy Galluzzi
Kevin Cheney
Nicole J. Greene
Cheney Galluzzi & Howard, LLC
1888 Sherman Street, Suite 200
Denver, Colorado 80203
tim@cghlawfirm.com
kevin@cghlawfirm.com
nicole@cghlawfirm.com

*Attorneys for Plaintiff*

/s/ *Theresa Damon*