## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03271-MEH

TORRENCE BROWN-SMITH,

     Plaintiff,

v

ANDREW FEINSTEIN, in his official capacity as President of the University of
Northern Colorado,

     Defendant.

## DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

     Defendant Andrew Feinstein, through the Colorado Attorney General, moves
to dismiss Plaintiff's Second Amended Complaint, ECF 41, pursuant to Federal
Rule of Civil Procedure 12(b)(6). In accordance with D.C.COLO.CivR 7.1(a),
undersigned conferred with counsel for Plaintiff on February 7, 2022 via phone.
Plaintiff opposes this motion.

## INTRODUCTION

     Plaintiff Torrence Brown-Smith filed his Second Amended Complaint after
this Court dismissed his prior complaint with leave to amend. ECF 39. But Plaintiff
makes no new significant factual allegations. ECF 40-1. Instead, Plaintiff reasserts
his procedural due process claim against an individual defendant on the same
allegations that the Court previously found lacking. ECF 41, ¶¶ 159-181. Because
Plaintiff's Second Amended Complaint suffers from the same defects as his prior
complaint, dismissal is similarly appropriate here.

## ALLEGATIONS

Plaintiff Torrence Brown-Smith was enrolled at the University of Northern Colorado and set to graduate in May 2020. ECF 41 at ¶2. On February 11, 2020, another student complained that Plaintiff had choked her and digitally penetrated her vagina without consent (the "Incident"). *Id.* at ¶ 78. On February 12, the University issued a Notice of Investigation to Plaintiff, setting forth the allegations of the victim. *Id.* at ¶ 79; *see* Feb. 12, 2020 Letter attached as **Exhibit A.**

On February 14, 2020, Plaintiff met with a University investigator regarding the Incident. *Id.* at ¶ 80. On March 12, the University sent Plaintiff a "Draft Investigation Report," that summarized facts and outlined contested and uncontested information gathered by the investigator. Plaintiff was provided with five business days to submit comments regarding the Report and additional questions that Plaintiff believed the investigator should ask the victim. *Id.* at ¶ 81. Plaintiff does not allege that he contributed any comments for the investigator's consideration. *Id.*

On April 24, 2020, the University informed Plaintiff that the investigation of the Incident was complete and that he needed to meet with a "Hearing Officer" to determine responsibility and outcomes, consequences, or next steps required. *Id.* at 82; *see also* April 24, 2020 letter, attached as **Exhibit B**. The April 24 letter identified the specific policies and standards that Plaintiff was accused of violating. **Ex. B** at pp. 1-2. The letter also informed Plaintiff that he needed to schedule the

meeting with the Hearing Officer "no later than Wednesday, April 29, 2020, at 4:00 pm." *Id*. at p. 2.

Included with the April 24 letter was a document titled "University of Northern Colorado Title IX Investigation Report." ECF 41 at ¶ 130. See also, **Ex. B**. With regard to the report and the meeting with the Hearing Officer, the April 24 letter provides:

> During the meeting, the Hearing Officer will review the report and you will have a chance to respond to the findings and ask questions. You will also be asked questions by the Hearing Officer during this meeting. *This meeting, in addition to the fact finding report, will be used to determine if you are responsible for violating any policies or standards.*

**Ex. B** at p. 2 (emphasis added). The letter also provides that Plaintiff was "entitled" to an advisor at the meeting, including an "attorney or any person you wish." *Id*.

On April 24, 2020, Plaintiff emailed the University to schedule his meeting with the Hearing Officer. ECF 41 at ¶ 83. The University replied on the same day, asking if Plaintiff was available to meet at 11:00 a.m. on April 27. *Id*. at ¶ 84. "*Plaintiff* responded at 6:19 PM on April 24 that 11 AM on April 27th would work." *Id*. at ¶ 85 (emphasis added).

The University Student Code of Conduct ("the Code") outlines the procedures used for disciplinary proceedings. Plaintiff was aware of the Code. *Id*. at ¶ 24. With regard to timing, the Code provides: "The student … subject to disciplinary action will be informed three (3) days prior to the hearing of a summary of the alleged behavior and code of conduct violation and the time and place of the hearing." *Id*. at

¶ 27; Student Code of Conduct, attached as **Exhibit C**, at p. 9 § IV.2  April 24 was

three days prior to April 27, 2020.

With regard to a student's responsibilities when meeting with a Hearing

Officer, the Code provides:

> The student … has the right to be assisted by an advisor if they choose,
> at their own expense. This advisor can be a faculty member, student,
> *legal counsel* or other individual, but can have no other role in the
> hearing, such as a witness. *The student is responsible for presenting his
> or her own information*, and therefore, advisors are not permitted to
> speak or participate directly in any hearing.

**Ex. C**, at p. 9 § IV.2 (emphasis added). The Code further provides that the student

"must submit to the Hearing Officer a list of any witnesses and/or information for

review 24 hours prior to the scheduled hearing." *Id.* Plaintiff does not allege that he

ever submitted a witness list for the Hearing Officer's review, nor does he indicate

whom he would have called as a witness.

On April 27, 2020, Plaintiff met with the Hearing Officer—as he had

previously confirmed. ECF 41 at ¶ 102. Plaintiff did not present witnesses and did

not bring an advisor with him. *Id.* at ¶¶ 94 and 102. On May 1, 2020, the Hearing

Officer sent Plaintiff a letter notifying him that he had been found responsible for

violating the Code. *Id.* at ¶¶ 6, 103 and 148. The eight-page May 1 letter, attached

as **Exhibit D**, includes findings and conclusions regarding the Incident.[1] As

relevant to Plaintiff's claims, the Hearing Officer found, based on a preponderance

of the evidence, that even if the victim consented to kissing, she did not consent to

---

[1] The identities of the victim and other student witnesses have been redacted in
accordance with FERPA. 34 C.F.R. § 99.30(a)

strangulation or digital penetration. *Id.* at pp. 1-3. The Hearing Officer concluded that Plaintiff was responsible for physical abuse, sexual harassment, and sexual misconduct. *Id.* at p. 3. As part of the discipline imposed, Plaintiff was suspended from the University until 2022. ECF 41 at ¶ 148. At some point, Plaintiff appealed the Hearing Officer's decision. *Id.* at ¶¶ 111-117.

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the court must consider the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the factual allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679. The length of a complaint, alone, cannot satisfy the plausibility standard. *Chaplin v.*

*Anderson*, 18-12108, 2019 WL 1219412, *2 (E.D. Mich. Mar. 15, 2019) ("Regardless of length, a complaint must still allege a plausible claim for relief.") (citing *Iqbal* and *Twombly*).

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

When conducting a plausibility analysis, a court is generally bound to the four corners of a complaint. However, when a "document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). "Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true." *Id.* at 1385.

## ARGUMENT

Plaintiff's remaining claim names Dr. Andrew Feinstein as the sole defendant in his official capacity as President of the University of Northern Colorado. ECF 41 at ¶ 15, 124. Plaintiff asserts a procedural due process violation based on the conclusory allegations that he did not have sufficient time to prepare for the hearing conducted by the Hearing Officer (ECF 41 at ¶ 90, 107), did not understand his rights and responsibilities at the hearing (¶¶ 119-122), was not informed of the charges against him (¶ 174), "was not given the materials being used against him in advance of the meeting" (¶ 108), and did not have the opportunity to present evidence and witness (¶ 174). However, Plaintiff fails to allege any new facts that support these allegations.

## I.   Contours of a procedural due process claim in the school disciplinary context.

The Fourteenth Amendment Due Process Clause states, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A student's interest in pursuing an education is included within the Fourteenth Amendment's protection of property. *See Goss v. Lopez,* 419 U.S. 565, 574-75 (1975). "At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." *Id.* at 579. As an example, students facing a temporary suspension of 10 days or less must "be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581.

While students facing more severe disciplinary action should receive the benefit of "more formal procedures," those procedures need not mirror the rights of a criminal or civil trial. *Brown v. Univ. of Kan.*, 599 F. App'x 833, 837 (10th Cir. 2015) (*citing Goss*, 419 U.S. at 584). "The Supreme Court has not answered the question of what, if any, additional process is required for a long-term suspension or expulsion." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001). However, the Tenth Circuit has identified what is *not* fundamentally required: "written notice specifying the charges, legal counsel, the presentation of evidence, the right to cross-examine witnesses, an impartial board, a transcript of the hearing, and independent review of the decision." *Id.* at 1242-43; *see also Brown*,

599 F. App'x at 837 (holding that, where a law student was expelled for falsifying his application, due process did not require "the equivalent of a trial").

**II.    Plaintiff received adequate notice.**

Plaintiff received written notice of the victim's allegations more than two months prior to his meeting with the Hearing Officer. ECF 41, ¶ 79; **Ex. A.** Plaintiff had an opportunity to share his perspective with an investigator. *Id.* at ¶ 80. Plaintiff had an opportunity to review a draft of the investigative report, and to provide feedback on that draft report before it was finalized. *Id.* at ¶ 81. Plaintiff was fully aware of the allegations against him and the investigative report was used by the Hearing Officer. **Ex. D**.

Plaintiff was provided with notice of the date of his hearing. ECF 41 at ¶ 84; July 6, 2021 Order Granting Motion to Dismiss, ECF 39, p. 17, attached as **Exhibit E**. Plaintiff received a letter notifying him of the exact purpose and significance of that hearing before he even scheduled it. *Id.* at ¶ 82; **Ex. B**. The letter set forth the provisions of the Code that Plaintiff was accused of violating and the Code defines those violations. *Id.* at ¶ 25; **Ex. B**, pp. 5-6. That letter stated clearly:

> During the meeting, the Hearing Officer will review the report and you will have a chance to respond to the findings and ask questions. You will also be asked questions by the Hearing Officer during this meeting. **This meeting, in addition to the fact finding report, will be used to determine if you are responsible for violating any policies or standards.** You are entitled to an Advisor of your choosing to accompany you and assist you throughout UNC's process, including this meeting.

**Ex. B**, p. 2.

Plaintiff asserts that the letter did not provide the requisite three days' notice of the hearing, but this Court has also already found to the contrary:

> While final confirmation was not provided until April 27, Plaintiff was contacted on April 24 regarding his availability on April 27 at 11:00 a.m. Plaintiff responded to say that he was available, but not until after business hours on April 24, which was a Friday. […] Plaintiff cannot have expected UNC to change the requested time of the meeting/hearing after that point, once he had agreed to the date and time. If Plaintiff had been concerned by the lack of suitable notice, he was within his rights to request a later date and time, but he did not do so.

**Ex. E**, p. 17. Further, this Court has also already held that the format and substance of Plaintiff's appointment with the Hearing Officer constituted the "hearing" required by the Code. *Id*. at p. 16 ("Based on the guidelines and rules set up in the Code of Conduct, Plaintiff received a 'hearing' as it is contextually understood in the Code of Conduct, regardless of whether it met Plaintiff's expectations for a hearing").

### III. Plaintiff received an adequate opportunity to present his version of events.

Not only did Plaintiff receive the full benefit of the pre-hearing procedures published in the Code, but Plaintiff also failed to utilize the hearing rights that were afforded to him. The Code affords students the right to an advisor (who may be an attorney), the right to present evidence, and the right to present witnesses. **Ex. C**. at pp. 9-10. The Hearing Officer reiterated Plaintiff's right to an advisor, who "may be a friend, parent, faculty mentor, attorney or any person you wish" in the letter preceding his hearing. **Ex. B**, p. 2. The April 24 letter also contained a full copy of the investigation report. *Id*. pp. 4-39.

Notwithstanding these facts, Plaintiff's position essentially remains that he did not understand his rights because he did not read this letter and "would have prepared differently" if he had understood the purpose of his appointment with the Hearing Officer. ECF 41 at ¶ 121. But Plaintiff was a college senior, and had been accepted into a Ph.D. program. ECF 41 at ¶ 23. And the Court previously rejected Plaintiff's arguments:

> Plaintiff alleges that, as a result of the lack of notice, he was denied the right to present favorable evidence on his own behalf. There are two flaws in this argument. First, Plaintiff could have reasonably assumed that the meeting was going to occur on April 27 after he confirmed his availability to UNC on April 24, which would have given him time to submit materials and witnesses ahead of the twenty-four-hour deadline required by the Code of Conduct. Second, Plaintiff does not identify a shred of evidence or a single witness which he would have listed and presented in his defense if given the opportunity, nor even that such evidence and witnesses exist.

**Ex. E**, p. 17. Plaintiff had a fair opportunity to offer witnesses and evidence to the Hearing Officer and simply failed to do so. Plaintiff's own failure to understand and fully take advantage of the procedural rights afforded to him cannot be deemed a violation of constitutional due process.

Further, Plaintiff acknowledges his misconduct in his Second Amended Complaint. ECF 41, ¶ 55. After the Hearing Officer determined that this conduct violated the Code, Plaintiff had an opportunity to appeal this finding. **Ex. C**, p. 10. Plaintiff filed an appeal, and the appellate board upheld the Hearing Officer's finding. ECF 41 at ¶¶ 111-114.

Plaintiff also suggests that he was denied constitutional due process because the Code did not afford him the right to "question his accuser." ECF 41 at ¶174.

But a university student facing a disciplinary expulsion does not have an unconditional right to confront accusers, present evidence, or cross-examine witnesses. *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1080-84 (D. Colo. 2017). While some courts have opined that cross-examination may be appropriate under some circumstances to satisfy the balancing test set forth by *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893 (1976), those cases hinged on the credibility of the accuser or witnesses. *Norris v. Univ. of Colo., Boulder*, 362 F. Supp. 3d 1001, 1020 (D. Colo. 2019) (collecting cases). *See also*, *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) ("when the university's determination *turns on the credibility of the accuser, the accused, or witnesses*, that hearing must include an opportunity for cross-examination.") (emphasis added).

Here, Plaintiff's student conduct case did not hinge on the credibility of the victim or witnesses interviewed in the investigation. Rather, the investigative findings were based largely on Plaintiff's own description of his conduct. Plaintiff admitted to choking the complainant during their encounter. **Ex. B**, p. 2; **Ex. A**, p. 9. Plaintiff acknowledges that his actions were based on inferences that he made from vague conversations he had with the victim prior in the evening, and not based on consent that he obtained from the victim. ECF 41, ¶¶ 46-47, 57. Such an admission by Plaintiff nullifies the need for a credibility assessment of the victim or witnesses.

Further, Plaintiff had the opportunity to challenge the victim's credibility and present evidence. The Code allowed the Plaintiff to review the investigative

report in advance of the hearing. *Id.* at ¶ 81. "The Report summarized facts and outlined contested and uncontested information gathered by Investigator Kohles. After reviewing the report, Plaintiff 'had the opportunity to submit comments to the Investigator and/or additional questions that either Party believed should be asked." *Id.* Plaintiff was also allowed to submit a list of witnesses to the Hearing Officer if he wished to do so. **Ex. C**, p. 9. As stated above, Plaintiff simply failed to do so. Based on Plaintiff's own description of his conduct and his failure to utilize the procedural protections afforded to him, the use of cross-examination—which is not even established as an absolute right in the Tenth Circuit—was wholly unnecessary to preserve Plaintiff's constitutional due process rights.

Finally, Plaintiff suggests that the University misapplied the "preponderance of the evidence" standard that it sets forth in the Code. ECF 41, ¶¶ 125, 142. To support this argument, Plaintiff relies entirely on a text message from the complainant student, indicating that at least parts of their interactions were consensual. *Id.* at ¶¶ 132-142. But the Court previously discounted the significance of this text. **Ex. E**, p. 19 ("Plaintiff treats Ms. Doe's text to her friend stating 'it was consensual' as a sort of smoking gun, ignored by UNC. However, this is a very limited view of what that text expressed… the text does not conclusively show that Plaintiff was innocent."). And Plaintiff overlooks the fact that the investigative findings were based largely on his own admission to choking the complainant during their encounter. **Ex. D,** p. 2; **Ex. B**, p. 9 ("In our second go around of kissing

that's when I made the **bad judgment** call of choking Ms. [Doe] in a sexual

manner.") (emphasis in original).[2]

## CONCLUSION

Because Plaintiff has failed to sufficiently allege any violation of federal law,

Defendant respectfully requests that Plaintiff's Second Amended Complaint be

dismissed in its entirety. Further, because Plaintiff has had three opportunities to

plausibly state his claims, without success, Defendant asks that Plaintiff's claim be

dismissed with prejudice.

DATED this 8th day of February, 2022.

PHILIP J. WEISER
Attorney General

*/s/ Eric T. Butler*
Skippere Spear, No. 32061*
Amy Colony, No. 36124*
Senior Assistant Attorneys General

Patrick Warwick-Diaz, No. 49024*
Eric T. Butler, No. 47969*
Assistant Attorneys General

Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203
(720) 508-6140; -6615; -6124; -6151
skip.spear@coag.gov
amy.colony@coag.gov
patrick.warwick-diaz@coag.gov
eric.butler@coag.gov
*counsel of record

Attorneys for Defendant

---

[2] This quote is in page 6 of the Investigative Report, which is page 9 of the PDF file.

14

**CERTIFICATE OF SERVICE**

I certify that I served the foregoing **Defendant's Motion to Dismiss**

**Second Amended Complaint** upon all parties herein by email at Denver,

Colorado, this 8th day of February, 2022 addressed as follows:

>Timothy Galluzzi
>Kevin Cheney
>Cheney Galluzzi & Howard, LLC
>1888 Sherman Street, Suite 200
>Denver, Colorado 80203
>tim@cghlawfirm.com
>kevin@cghlawfirm.com
>nicole@cghlawfirm.com
>
>Attorneys for Plaintiff

*/s/ Carmen Van Pelt*

15